May it please the Court, my name is Michael Blanton, and I represent the Plaintiffs and Appellants in this action, Nicholas Rey and Jessica Quinn. Our primary argument before the District Court involved the application of Rule 44.1, and so I'd like to start there. The District Court should never have reached the issue of choice of law with respect to application of Mexican law because General Motors failed to provide reasonable notice of its intent to seek application of Mexican law as required by Rule 44.1. General Motors first suggested that it had intended to seek application of Mexican law more than a year into this case, after plaintiffs had already disclosed their experts and after discovery had already closed. The plaintiffs argued that that was not reasonable notice under Rule 44.1 because General Motors knew from the beginning of this case that the accident occurred in Mexico. Now, Rule 44.1 provides a party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. And the specific words of the rule are important because the rule speaks in terms of intent. The focus is on intent. And the intention. Now, the District Court held that there was no waiver in this case stating since the accident here occurred in Mexico, the issue of whether Mexican law applies was likely to be raised. But again, with all due respect, the issue under Rule 44.1 isn't whether Mexican law was likely to be raised. It was did General Motors intend to seek the application of Mexican law. And that's the notice that it should have given and that it failed to give in this case. Counsel, Rule 44.1 does not provide a deadline for the notice. So why doesn't the scheduling order under Rule 16 provide that deadline? GM has focused on Rule 16. I think it's improper to conflate the requirements of Rule 16 and Rule 44.1. Rule 16 provides deadlines for pleadings. Rule 44.1 provides a much broader obligation to provide notice of intent to seek application of foreign law. And that obligation isn't limited to pleadings. The comments to the rule specifically indicate it can be any writing. And at a party, Rule 44.1 doesn't require a party to put forth their argument in support of application of foreign law. It simply says they have to provide notice. And Moore's Federal Practice Third makes that precise point. Notice under Rule 44.1 differs from argument. Notice merely calls attention to the fact that the issue will be raised. In this case, if General Motors had literally just sent an e-mail to opposing counsel early in this case saying, we intend to seek the application of Mexican law, period, that would have been sufficient to meet the standard. It didn't have to present its argument at that time. So the Rule 16 standard is not what determines timeliness of notice under Rule 44.1. As this Court recently recognized in the Azarax decision, it is only fair to provide notice of potential application of foreign law as early as is practicable. Now, in this case, General Motors knew from the beginning of the case, from the pleadings, that the accident occurred in Mexico. So it was practicable at the very beginning of the case for General Motors to provide notice. You think that was a statement of the rule of law, or was that hortatory? Well, it's a phrase that's repeated in other cases, including the Raciones case, which this Court cited in Azarax. So it's certainly an interpretation of Rule 44.1 that has been adopted by multiple courts, and that I read Azarax as adopting as well. I think it is a fair statement of the standard under Rule 44.1. In this case — I just — I looked back. I think it was quoting a Ninth Circuit case. Do you remember that? Is that Raciones? D.P. Aviation. Oh, it's the other one. Okay, yeah. It was quoting the Ninth Circuit case, and it stated that. But I think in that case, they did not give notice as early as practical, but the Court still said it was sufficient, if I remember. And that's what led me to wonder whether it was more hortatory. Actually, in D.P. Aviation, the Court held that the notice was not sufficient under Rule 44.1, and it recognized that the notice should have been provided as early as practicable. So in that case, they held that the party did not meet that standard. Okay. Thank you for that. In this case, rather than providing timely notice, General Motors allowed plaintiffs to proceed under the assumption that Missouri law applied in this case. And General Motors knew that plaintiffs believed that Missouri law applied in this case, because plaintiffs had identified Missouri law in their repeated amended complaints as the basis for their claims. And worse than that, General Motors indicated that it was also relying upon Missouri law, because it identified Missouri law as the basis for its affirmative defenses stated in its answers. But rather than giving notice, General Motors waited until plaintiffs had disclosed their experts and discovery had closed, before giving its very first notice of its intent to seek application in Mexican law.  The issue of foreign law had been raised before discovery had closed. Well, and that partly hits upon the third factor, which is the impact on the case as a whole. The impact on this case was critical, because once the district court adopted Mexican law, it applied a different standard of care. It applied a different standard of causation. It changed the damages that were available to plaintiffs. It allowed new affirmative defenses, which would not have been available other than under Mexican law, and the court used that to dispose of the claims. So all of those issues would have directed the course of discovery in this case, and maybe even more importantly, the selection of experts. If plaintiffs had known from early in the case that the case was going to be tried under Mexican law, they would have retained experts who were tailored towards establishing theories that they would pursue under Mexican law. They would have had discovery to support those theories under Mexican law. So I think it had a huge impact. In the McKay case, which we cite in our brief, I think it's fairytelling. It's a product liability case. And in McKay, the Court observed now in that case that the choice was between Alabama law and Japanese law, and the Court stated whether Japanese law applied in this case is an issue that was capable of being raised from the beginning. And the Court then said, given the differences between Alabama law and Japanese law, discovery may have taken a completely different route had the plaintiff known from the outset that the court or the jury would evaluate her claims under Japanese law. I would suggest that if you just replace the word Japanese with Mexican, that applies exactly to our case. The purpose of the rule, as this Court recognized in Azarax, is to avoid unfair surprise, and plaintiffs were unfairly surprised in this case. I'd like to briefly shift over to what I call the false conflict issue. As this Court is aware, a court applies to the law of the forum with respect to choice law. In this case, that's Missouri law. And Missouri choice law principles provide that a case involves a false conflict if there is no resident of the foreign jurisdiction before the court. And in this case, there were no residents of Mexico before the court. So that's a second basis for arguing that the district court should never have reached the choice of law analysis with respect to the application of Mexican law. I can see I'm … Breyer, it's not a false conflict in this context meant, where the law, the different jurisdictions did lead to a different outcome. Well, again, Missouri law provides a false conflict of all exists when the policy of the foreign jurisdiction would not be advanced by application of its law because there is no resident of the foreign jurisdiction before the court. So the idea is because there were no Mexican residents before the court, the policies of Mexico would not be furthered. Well, there was a Mexican citizen before the court, was there not? There was a Mexican citizen. But, again, the rules, this rule and the choice of law rules focus upon residents. And the district court expressly found that Mr. Ray was a resident of Missouri, had long been a resident of Missouri, was married to a citizen of Missouri, was raising kids in Missouri. So I, frankly, I think that's a red herring as to the citizenship, Your Honor. But I thought he was forbidden to return at the point of the accident. He was renewing his visa. So I would actually characterize it as the reason he was in Mexico was because he was taking the steps that he needed to take to continue being a resident of Missouri as he had been since he was a child. He had long lived in Missouri. I say I have a little less … How long had his visa been expired? I do not know the exact timing of that, Your Honor. I say I have a little less than a minute if I could reserve that. You may. You may. Thank you for your argument. Thank you, Your Honor. Ms. Frey, we'll hear from you. May it please the Court. Melanie Frey on behalf of the Appley General Motors. This case stems from an accident in Parras de la Fuente, Coahuila, Mexico, involving a driver who was a Mexican citizen who was unable to enter the United States at the time of the accident and, in fact, who was headed to a destination in Mexico to stay with his family. The driver and his wife, nevertheless, filed suit in Missouri seeking personal injury damages. Although the plaintiffs themselves asked the district court to make a determination regarding which jurisdiction's law would apply, when GM made a simultaneous request, plaintiffs argued that they were unfairly surprised that another jurisdiction's law might possibly be at issue. The district court, in its discretion, rightly determined that the plaintiffs were not unfairly surprised that the laws of Mexico might be at issue and applying Missouri's choice of law principles, which presume that the law of the state where the injury occurred will govern absent an overriding interest of another state, the plaintiffs had not overcome that presumption when the contact with Missouri was merely the residence of the driver's wife and of the driver prior to the expiration of his visa. The district court's ruling should be affirmed in all respects. As for the plaintiffs' argument that they were unfairly surprised to their detriment that Mexican law might be at issue, the district court did not abuse its discretion in holding that they were not. Rule 44 is very simple. As Your Honor noted, Judge the comments to the rule are very helpful. Rule 44.1 is intended to prevent unfair surprise. It does not require the notice to be given in a pleading or at the outset of the case as long as the notice is reasonable. And here's what that means. To be reasonable, notice under Rule 44.1 need only come at any time sufficient to give the court and the opposing party adequate notice of the need to research the foreign rules. The rule also implicates the discretionary powers of the district court to supervise its litigation and it fundamentally deals with this power, the power of the trial court judge and his discretion to run his docket. The procedural posture of this case, I think, governs this analysis. The scheduling order always had a choice of law deadline in it. And the court, in fact, cautioned the parties against filing motions for choice of law too early before all the facts had been developed. Most importantly, plaintiffs moved to extend the choice of law motion deadline twice, first in March asking that it be kicked to September and then again in May asking that it be further extended. And in extending those scheduling order deadlines, the plaintiffs never said, well, we think other deadlines should be extended but choice of law, that's really inapplicable. We'll leave that as is. No. They made affirmative requests in writing to extend that deadline by name. They also filed their own choice of law motion on the same day as GM's. I think that's significant because of what they said in the motion. In that motion, they admitted the presumption in favor of Mexican law applies. They admitted and acknowledged that. They admitted it was their burden to overcome it and then they attempt to do so in the choice of law motion. They asked the court to make a determination regarding the choice of law, admitting their understanding that such a determination had not yet been made. And they didn't complain that it was now too late to make such a determination. In fact, they asked the court to engage in that analysis. After the choice of law motions were filed and the issue of whether Mexican law was going to govern the case was still pending, plaintiffs opposed a continuance of the trial setting. After the court made its determination that Mexican law would apply, plaintiffs pushed to maintain that current trial date. They said, we have every intention of proceeding to trial on the case. In fact, within hours of the court's ruling, plaintiffs represented to the court that they were speaking with their Mexican law experts. Within five days, plaintiffs had filed a motion for leave to file their amended complaint, attaching the draft amended complaint applying Coahuila law. Within seven days of the judge's ruling, they filed an advisory opinion, a declaration, a CV of their Mexican law expert, Judge Flores, and translated copies of the Civil Code of Coahuila. More time passed after the choice of law motions were filed than before. From the filing of this lawsuit up until the day both parties filed their choice of law motions, 13 months. From the filing of the choice of law motions to trial, 17 months. Why would it take 13 months for General Motors to notify that it intended to seek application of Mexican law? If you don't like our case that says you should do it as early as practicable, I don't think you didn't mention it in your brief, but why shouldn't this be something that's done promptly? As far as the Azarax quote, we kind of cut it short because it goes on and says, in any event, at a time that is reasonable in light of the interests of all the parties. I'm not sure it's a statement of, well, what's your thought on why 13 months is reasonable? Is it strictly because the scheduling order set a deadline then? It's not strictly. The original choice of law deadline was in July, and the plaintiffs, as I said twice, moved it down to October of 2020 when both parties actually did file their motions. But it wasn't a deadline for Rule 44.1. It was for choice of law. That's true. Discovery did go on during that time. There was much to be learned about why the plaintiffs were in Mexico, how long they'd been there, why they turned around at the border and went back, what was going on. This was very cloudy after their depositions. GM actually had to engage in its own investigation to determine what was going on. In other words, to make an argument about choice of law, we apply Missouri's principle that the place of the accident will govern unless another state, here plaintiffs argue Missouri, has some kind of overriding interest. It was not clear at that time that they filed the suit what was Mr. Ray doing in Mexico, how long had he been there, why was the whole family there with him. All that's clear to us now, but that required investigation. It required discovery, which makes sense about why the discovery deadline was actually in the scheduling order before the choice of law deadline and why the judge cautioned the parties, don't file these too early before all the facts are developed. And I have enough to understand how to engage in this analysis. Moving to the false conflict issue, Your Honors, we do contend that it's waived. But wouldn't you give the notice of intent without cutting off the discovery and still allow the process to go forward? You seem to be saying you can't give an intent about foreign law until you've completed discovery. Is that really the argument? It's not that you can't. There have been cases where judges have opined that if you give notice without all the underlying facts, you set kind of that process going, that you could possibly be wasting the court's or all of the party's time. That if you're engaging in that discovery and you have those facts and everybody anticipates Mexican law is going to be at issue and it's anticipated from day one, then as Judge Case held, there's no unfair surprise to the side. Because Rule 44 doesn't speak in terms of, gee, I'm giving it as soon as possible. It does speak in terms of whether or not the plaintiffs were unfairly surprised to their prejudice. And that is absent from this record. They knew that it would be at issue. They put it at issue themselves. And their actions afterwards show the complete lack of any prejudice. For the plaintiffs today to argue, well, you know, had we known we would have done more discovery, we would have maybe changed our experts, two points there. One, 17 months. Seventeen months elapsed from the choice of law motion, the notice under Rule 44? Never. Did they ask to complete more discovery? Did they attempt to take any supplement expert reports? None of it. In fact, the argument that Your Honor has heard today is the first we've heard plaintiffs say we needed more discovery because they didn't. And their pleadings that are filed after the choice of law motions that were filed with the district court saying, we're ready to go. They say in Document 176, as in the record, Document 176, they say, look, discovery is closed. Everybody has known for a year that Mexican law could be at issue. All we need to do is change our pleadings to conform them to Coahuilan law. We want to keep the trial date. Let's go. They're not asking for more discovery. And so to say now that the reason it's unfair is that they need more discovery, that's directly contrary to what they were representing to the court at the time in the 17 months that elapsed. In my final remaining seconds, I would stand on the waiver argument on the false conflict issue. If the court would look at the reply brief, the only thing they cite to to try and preserve that issue is Record Document 91 at pages 15 and 17. The court will not find it preserved at that record site. With that, Your Honors, we ask that you would affirm the orders of the district court in their entirety. Thank you. Very well. Thank you for your argument. Mr. Blanton, we'll hear rebuttal. Thank you, Your Honor. General Motors knew from the beginning that the accident occurred in Mexico, and that's the basis for its assertion that Mexican law should apply. So General Motors didn't need more discovery to know that. This is similar to Azrax, where the court observed the parties knew from the initial pleadings that fact. General Motors mentioned 17 months elapsed several times. Actually, the court waited more than a year to issue its choice of all order. So the court issued its choice of all order less than a month before the pending trial date. The trial date was then extended five months, but plaintiffs did not have the chance to go back and completely redo their experts and their discovery at that point. The reality is plaintiffs were put in a position where they had to try to fit their Missouri claims into Mexican law. Plaintiffs were never given the chance to prepare their case based on Mexican claims. They could have had that chance if General Motors had provided the notice it should have. I see my time is up. Unless the court has questions, thank you very much. All right. Thank you for your argument. Thank you to both counsel. The case is submitted, and the court will file a decision in due course. Thank you both.